David H. Bernstein (dhbernstein@debevoise.com)
Christopher J. Hamilton (cjhamilton@debevoise.com)
S. Zev Parnass (szparnass@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Pernod Ricard USA, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| PERNOD RICARD USA, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 09 Civ. 2999 (MGC) |
| | : | ECF CASE |
| WHITE ROCK DISTILLERIES, INC. A/K/A | : | |
| CALICO JACK, LTD., | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Pernod Ricard USA, LLC ("Pernod Ricard"), by its attorneys, Debevoise &

Plimpton LLP, for its first amended complaint, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for trade dress infringement, false designation of origin,

trade dress dilution, deceptive acts and practices, and unfair competition, under federal

and state law, arising out of the offering for sale of a line of fruit-flavored rum spirit

products marketed by White Rock Distilleries, Inc. ("White Rock"), also known as

Calico Jack, Ltd. or Federal Distilleries.

2.      Defendant has embarked on an unlawful campaign to lure consumers into purchasing its fruit-flavored rums under the mistaken belief that its rums come from, are sponsored by, or are associated or affiliated with, the MALIBU® brand, Pernod Ricard's market-leading line of fruit-flavored rum spirits.  At the heart of Defendant's campaign of deception is the deliberate copying of the opaque white color of Pernod Ricard's iconic MALIBU® bottle, along with its copying of the MALIBU® bottle's well-recognized tropical beach theme and palm tree motif.  Defendant's improper design of the bottles for its BARBAROSSA, BAROCA and JACK lines of flavored rum beverages (together, the "Infringing Products") appears intentionally to mimic several key elements of the distinctive trade dress of Pernod Ricard's famous MALIBU® flavored rum beverages.

3.      In particular, and as shown in the images below, Defendant has infringed and diluted Pernod Ricard's trade dress because the packaging for the Infringing Products shares the following elements with the MALIBU® trade dress:  (i) the identical opaque white color of the BARBAROSSA, BAROCA and JACK bottles; (ii) an image on the front of the bottle of a beach scene featuring palm trees; (iii) a similar stylized palm tree design on the neck label; (iv) similar fonts for the BAROCA and JACK brand names and descriptive words such as "COCONUT RUM," and (v) an overall tropical island feel or look.



4.      Defendant's deception is all the more confusing because, like Pernod Ricard, Defendant uses these similar trade dress elements on coconut-, pineapple-, mango- and banana-flavored rum spirits.  Indeed, in the JACK line of Defendant's products, Defendant's brand names emphasize the similar flavor line up, including COCONUT JACK, PINEAPPLE JACK, MANGO JACK and BANANA JACK.  Thus, not only are the trade dress elements very similar, but the products are as well.  These similarities between Defendant's lines of flavored rum spirits and Pernod Ricard's market-leading MALIBU® flavored rum spirits are simply too many to have occurred by chance; rather, they appear to reflect a deliberate attempt by the Defendant to make its BARBAROSSA, BAROCA and JACK flavored rum spirits look like the MALIBU® brand to the unsuspecting consumer.

5.      Defendant's unlawful conduct is causing and will continue to cause harm to Pernod Ricard.  In particular, consumers seeing Defendant's products will believe that the Infringing Products are associated with Pernod Ricard or its MALIBU® rum beverage.  This conduct, if not enjoined, will undermine the goodwill that Pernod Ricard and its predecessors in interest have spent twenty-five years carefully cultivating for the MALIBU® brand.

## THE PARTIES

6.      Pernod Ricard is a limited liability company organized and existing under the laws of the State of Indiana with its principal place of business at 100 Manhattanville Road, Purchase, New York 10577.  Pernod Ricard owns rights in the United States to several famous liquor and spirit brands, including SEAGRAMS® and KAHLUA®.

MALIBU®, one of Pernod Ricard's principal brands, is distributed in New York, throughout the United States, and in many international markets.

7.    Upon information and belief, Defendant White Rock is a corporation organized under the laws of Maine with its principal place of business at 21 Saratoga Street, Lewiston, Maine 04240.  Upon information and belief, White Rock produces and imports fruit-flavored rum spirits under the BARBAROSSA, BAROCA and JACK product lines, and sells these products throughout the United States, including in this District.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The amount in controversy is in excess of $75,000, exclusive of interest and costs.

9.    This Court has personal jurisdiction over Defendant pursuant to N.Y. Civ. Prac. L. & R. §§ 301 & 302(a).  Upon information and belief, Defendant regularly has solicited business in the State of New York and in this District, has transacted and done business in the State of New York and in this District, has wrongfully caused injury to Pernod Ricard in the State of New York and in this District, such injury being reasonably foreseeable, and derives substantial revenue from interstate commerce.

10.    On information and belief, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District, including the sale of BARBAROSSA, BAROCA and/or JACK

products at retail locations in this District.  Venue also is proper in this District pursuant

to 28 U.S.C. § 1391(c) because Defendant is deemed to reside in this District.

## THE MALIBU® PRODUCT LINE, TRADEMARK AND TRADE DRESS

11.    MALIBU® rum entered the market in 1983 as a rum flavored with natural

coconut and a laid back, Caribbean-themed, tropical island personality that has since

attracted consumers to its now iconic white bottle.  Based on the success of the coconut

flavored version of MALIBU® rum, four additional flavored rums have been added to the

MALIBU® family:  pineapple, mango, banana and passion fruit.  All MALIBU® rums are

packaged in the same distinctive and highly successful packaging: an opaque white bottle

featuring an image of palm trees and a setting sun on the front of the bottle and a stylized

palm-tree design on the neck label.  This trade dress, characterized by its white bottle and

tropical island feel, makes Pernod Ricard's MALIBU® brand distinguishable from the sea

of typical rum bottles.  Indeed, in the vast majority of retail outlets, restaurants, and bars,

MALIBU® rums are the only spirit bottles on the shelf in an opaque white bottle.

12.    Through carefully planned design and marketing, the MALIBU® brand

has long been the market leader in flavored rum.  Since its introduction, the brand has

achieved renown in the industry, the press, and among consumers.  It also has enjoyed a

remarkably high level of commercial success, due in large part to the brand's iconic

white bottle, which stands out from other spirit bottles on store shelves and in bars.

Notwithstanding the addition of numerous competitors in this category, the MALIBU®

brand remains the recognized category leader in fruit-flavored rums and its white bottle is one of the most recognized spirits packages in the world.

13.    The MALIBU® bottle trade dress is registered with the United States Patent and Trademark Office.  *See* United States Trademark Registration No. 3,393,773, a copy of which is attached hereto as Exhibit A.  As the registration certificate shows, the trade dress specifically includes the white color of the bottle (regardless of the shape of the bottle), as well as the palm tree motif on the front of the bottle**.**  This trade dress results in an overall beach or tropical theme that is strongly associated with MALIBU® rums.

14.    The phenomenal success of the MALIBU® brand has been based, in part, on its unique bottle design, or its "trade dress."  Most critically, the opaque white color of its bottle is unique in the spirits industry and immediately communicates that the product is part of the MALIBU® line.  Consumers can easily differentiate MALIBU® from other fruit-flavored rums thanks to its distinctive white bottle.  Indeed, as shown by the images on the top of the next page, among all of the top rums sold in the United States, only MALIBU® comes in a white bottle.  Therefore, the opaque white color of the MALIBU® bottle is one of the most important ways the brand attracts consumers, who identify the brand on the shelf or in the hands of celebrities and other consumers.  It is thus among Pernod Ricard's most valuable intellectual property rights.



15.    A survey commissioned by Pernod Ricard demonstrates that approximately 39% of the relevant universe of past or potential purchasers of a bottle of rum associate the white bottle with a single source.  Among survey respondents who identified the white bottle with a single source, approximately 80% specifically identified MALIBU® by name as the brand of rum that comes in the white bottle design.  These survey results demonstrate that Pernod Ricard has established secondary meaning for the MALIBU® brand's distinctive white bottle.

16.    The additional trade dress features, including the palm tree image and design, further distinguish the look of the brand and create a tropical, breezy and laid-back feeling that consumers associate with the MALIBU® brand.

### ADVERTISING, MARKETING AND SALES OF MALIBU® FRUIT-FLAVORED RUM BEVERAGES

17.    Pernod Ricard has invested substantially in promoting and advertising its MALIBU® brand with a strategy that focuses heavily on the brand's iconic opaque white bottle.  Pernod Ricard devotes a great deal of marketing resources to ensuring that its MALIBU® bottles are easily visible where sold, and in ensuring that MALIBU® bottles

stand in sharp contrast to the standard clear or tinted bottles that line the shelves of supermarkets, liquor stores and bars:



In this way, potential new consumers easily locate the product, recognize it from its distinctive and familiar white bottle, and want to try it themselves.  Likewise, the unique white bottle enables returning customers to easily identify the MALIBU® brand without the requirement of sifting through a sea of visually similar bottles.

18.    The nature of the trade dress – with its eye-catching white bottle – supports Pernod Ricard's marketing strategy because, even from far away, a MALIBU® bottle can be recognized by its distinctive trade dress, as shown in the photograph at the top of the next page:



The strategy works, however, only if consumers recognize MALIBU® products when they go to a store to purchase them and can identify the distinctive MALIBU® packaging when they describe the products to others.

19.    As part of its marketing approach, Pernod Ricard has also invested in "events marketing," making MALIBU® rum products available at high profile party and sampling events and public relations activities.  For example, in 2007 Pernod Ricard created the "Noche Blanca" program, a MALIBU® rum sampling party program aimed at Hispanic nightclub goers nationwide, who are encouraged to come to the nightclub parties dressed in white (which reinforces the white color of the MALIBU® dress) and sample new cocktails made with MALIBU® fruit-flavored rums.  The name for the event translates in English to "White Night," enabling Pernod Ricard to build the association with the MALIBU® white bottle as a "festive type of rum."  *See* Exhibit B.

20.     In addition, Pernod Ricard prominently features the white MALIBU® bottle in its advertisements.  In fiscal year 2007-08, Pernod Ricard spent approximately $36 million advertising and promoting the MALIBU® brand in the U.S.  As shown in the example at right, virtually all of these ads feature images of the iconic MALIBU® bottle and/or other images building on the MALIBU® brand's white colored bottle or its palm tree logo and tropical beach theme.



In fiscal year 2008-09, Pernod Ricard spent even more promoting the MALIBU® brand in the United States; it spent nearly $39 million on advertising and promotion.  For fiscal year 2009-10, Pernod Ricard has budgeted $44 million for advertising and promoting the MALIBU® brand in the United States.

21.     MALIBU® beverages have enjoyed steady sales growth since their original introduction in 1983 and since the introduction of additional fruit-flavored rum lines in 2003.  In fiscal year 2007-2008, net sales from MALIBU® beverages in the United States reached more than $130 million, representing the sale of more than 16 million liters of MALIBU® rum.  MALIBU® is the number three rum brand in the U.S., according to both volume and value, and the number one flavored rum.  It is also among the top 25 premium spirits in the world.

**LIKELIHOOD OF CONFUSION AND DEFENDANT'S BAD FAITH**

22.    Given the striking similarity between the trade dress of MALIBU® rums and the trade dress of Defendant's fruit-flavored rums, there is a likelihood that consumers will buy the Infringing Products under the mistaken belief that they come from, are sponsored or licensed by, or are associated or affiliated with, Pernod Ricard, the maker of MALIBU® rums.  Notwithstanding the prominent use of the BARBAROSSA, BAROCA and JACK names on the Infringing Products' labels, the use of the opaque white bottle that has become so associated with MALIBU® on a competing product is likely to confuse consumers.  Survey evidence confirms that consumers are confused by White Rock's trade dress.

23.    The likelihood of confusion is further exacerbated by the fact that flavored rum is a relatively low-cost item (about $20 for a standard 750 ml bottle), and consumers are unlikely to exercise a great deal of care before making a purchase.

24.    Confusion is also likely because the Infringing Products are sold in many of the same channels of trade through which MALIBU® rums are sold.

25.    Defendant's bad faith in copying the MALIBU® trade dress is further evidenced by Defendant's bad faith retail shelving strategies.  On information and belief, Defendant has encouraged retailers to place the Infringing Products directly in the middle of long rows of the signature, white MALIBU® rum bottles on store shelves, with the intent to confuse consumers.   For example, as shown on the next page, at left, Sweetbay, a major chain retailer in the Florida market, instructs its stores through its "planogram" to place BARBAROSSA bottles in between bottles of MALIBU® on its shelves.  Other

11

retailers shelve Defendant's products directly next to MALIBU® bottles on the shelf, as

shown in the photograph below, at right.  The intentional placement of these bottles next

to or interspersed between the signature white MALIBU® bottles in a display seemingly

devoted to the MALIBU® product is sure to exacerbate confusion.   The characteristic

white bottle is so strongly associated with the MALIBU® brand that consumers who

intend to grab and purchase the well known MALIBU® brand may mistakenly purchase

Defendant's white-bottled rums instead.

 

26.    Defendant's infringing trade dress is also likely to result in the mistaken

purchase of the Infringing Products by consumers who incorrectly believe that

Defendant's Infringing Products come from, are sponsored or licensed by, or are

associated or affiliated with Pernod Ricard, the makers of MALIBU®.  Even if consumers

notice the slight differences in packaging, the overall look of the bottles is so similar that

consumers will mistakenly believe that the Defendant's Infringing Products are somehow

associated with the market-leading MALIBU® brand.

27.    In particular, some consumers who do notice the slight differences between MALIBU® rums and Defendant's Infringing Products will likely have the mistaken perception that the Infringing Products, which generally sell for lower prices than MALIBU® rum, are a less expensive brand offered by the makers of MALIBU® brand rum.  Consumers who purchase the Infringing Products based on this confusion may be disappointed by the low quality of Defendant's rums (judging by online reviews of Defendant's BARBAROSSA coconut rum, about which consumers have written:  "I paid $5 for this rum and I think I overpaid," and "When mixed with anything the flavor is completely lost.  It's cheap for a reason."  *See* http://www.rumreviews.com/?rr=reviews&rums=184, last visited March 26, 2009, attached as Exhibit C.).

28.    Defendant even imitates Pernod Ricard's MALIBU® website (located at http://malibu-rum.com).  The MALIBU® website shows a lush tropical island in the distance and uses as its general tagline "GET YOUR ISLAND ON":



Defendant's website (located at http://www.jackrums.com) also prominently features an image of the sea with a lush island in the distance:



29.    Defendant's conduct is all the more culpable when measured against other entries in the fruit-flavored rum category.  A survey of the trade dress used by these other fruit-flavored rum products, past and present, shows the many, virtually limitless options available to companies that wish to enter this market:



30.    The similarity of Defendant's opaque white bottle, palm tree images, and a tropical beach theme, to Pernod Ricard's classic MALIBU® trade dress, is all the more striking when viewed in light of this range of designs for other products in the category.

31.    This is not the first time White Rock has been accused of copying the intellectual property of famous national brands in designing and selling its own products. In 1992 Chatam International, makers of the well known CHAMBORD raspberry liqueur, sued White Rock for trademark infringement based on White Rock's CHATEAU CHAMBERY raspberry liqueur.  Although White Rock eventually agreed to a consent injunction requiring it to discontinue its infringing conduct, White Rock violated the Court's order and was subsequently found in contempt.  *Chatam Int'l, Inc. v. White Rock Distilleries, Inc.*, No. 2:92-cv-05614-LB, 1993 WL 377079 (E.D. Pa. Sept. 14, 1993).

32.    In 1992 White Rock was also sued by Allied-Lyons Corp. for trademark and trade dress infringement of Allied-Lyons' KAHLUA coffee liqueur product (now owned by Plaintiff).  In connection with that litigation and its settlement, White Rock changed the name of its KAPALA coffee product to KAPALI, and also made significant changes to the product's trade dress.  The court order prohibits White Rock from "exploiting, distributing, selling, offering for sale, promoting or advertising coffee liqueur" under any name which "is not substantially different" from KAHLUA, and prohibits White Rock from using any label or bottle shape that is not substantially different from KAHLUA's label or bottle shape.  *Allied-Lyons North America Corp. v. White Rock Distilleries, Inc.*, 92-CV-73475DT (E.D. Mich. order issued Aug. 6, 1992).

33.     In 2006, C&C International, makers of the well known FRANGELICO hazelnut liqueur, sued White Rock for trade dress infringement based on its FRANCESCA hazelnut liqueur.  *C&C Int'l Ltd. v. White Rock Distilleries, Inc.*, No. 1:06cv11329 (D. Mass. dismissed Aug. 2, 2007).  This case was subsequently settled, with changes to the trade dress of White Rock's FRANCESCA product and presumably with an agreement that White Rock cease its infringement of C&C's trade dress rights.

34.     Most recently, Diageo sued White Rock for trademark and trade dress infringement in connection with White Rock's ORLOFF vodka, which, Diageo asserts, infringes its rights in its SMIRNOFF vodka brand.  *Diageo N. Am., Inc. v. White Rock Distilleries, Inc.*, No. 1:09-CV-22481 (S.D. Fla. complaint filed Aug. 24, 2009).

35.     As these cases show, White Rock's business model appears to be premised on the intentional copying of the trademarks and trade dress of established and well known brands for the sale of its own products.

36.     Pernod Ricard is aware of a small number of other flavored rum producers who have sold products in a white bottle.  Some of these producers, such as the makers of COCO RIBE and SAN TROPIQUE, have either discontinued the products or changed the trade dress to eliminate use of the white bottle.  For other marketers of flavored rums in white bottles, Pernod Ricard is similarly objecting to their infringement of the MALIBU® trade dress, and intends to seek either their agreement to discontinue use of the white bottle or injunctive relief against their trade dress as well.

## COUNT I:  REGISTERED TRADE DRESS
## INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT

37.     Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

38.     The MALIBU® trade dress design mark, which includes an opaque white bottle and palm tree logos, is federally-registered with the USPTO.  *See* Exhibit A (United States Trademark Registration No. 3,393,773).

39.     The trade dress of MALIBU® is used in commerce, is non-functional, is inherently distinctive, and has acquired substantial secondary meaning in the marketplace.

40.     White Rock's Infringing Products, which are being sold in commerce, are sold in opaque white bottles virtually identical to those which have become the signature distinguishing design trait of MALIBU® rum products and thus feature a trade dress that is confusingly similar to the trade dress of MALIBU® fruit-flavored rums.  Defendant's manufacture, distribution, sale and promotion of its flavored rum products in these white bottles is likely to cause confusion and mistake and to deceive retailers and consumers as to the source, origin or sponsorship of their products.  Consumers seeing White Rock's white bottles in the marketplace likely will believe that they come from, are sponsored or licensed by, or are associated or affiliated with, Pernod Ricard's renowned MALIBU® line of fruit-flavored rum beverages.

41.    Defendant's deceptive marketing and sales practices in connection with its flavored rum beverages constitute infringement of the registered MALIBU® trade dress in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.    By reason of the foregoing, Pernod Ricard is entitled, after trial, to injunctive relief against Defendant, restraining Defendant from any further acts of trademark and trade dress infringement, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

## COUNT II:  TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN, UNDER SECTION 43(a) OF THE LANHAM ACT

43.    Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

44.    Defendant's deceptive marketing and sales practices in connection with the Infringing Products constitute infringement of the MALIBU® trade dress and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45.    By reason of the foregoing, Pernod Ricard is entitled, after trial, to injunctive relief against Defendant, restraining Defendant from any further acts of trademark and trade dress infringement, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

## COUNT III:  TRADE DRESS INFRINGEMENT
## UNDER STATE LAW

46.    Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

47.    Defendant's acts, as described above, constitute trade dress infringement under N.Y. Gen. Bus. Law § 360-k (McKinney Supp. 2009), and under analogous infringement laws in other states.  *See*, *e.g.*, Cal. Bus. & Prof. Code § 14245 (West 2008); Fla. Stat. § 495.131 (2008); and Tex. Bus. & Com. Code Ann. § 16.26 (Vernon 2007).

## COUNT IV:  TRADE DRESS DILUTION UNDER
## SECTION 43(c) OF THE LANHAM ACT

48.    Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49.    The MALIBU® trade dress is a famous and distinctive trade dress that is widely recognized by the general consuming public of the United States as a designation of source for Pernod Ricard's goods.  Among other things:  (a) the MALIBU® trade dress is inherently distinctive and has also acquired a high degree of distinctiveness; (b) the MALIBU® trade dress has been used for over twenty-five years throughout the United States; (c) Pernod Ricard and its predecessors have spent many millions of dollars advertising and publicizing the MALIBU® trade dress in the United States; (d) Pernod Ricard has used the MALIBU® trade dress throughout the United States; (e) the MALIBU® trade dress is among the preeminent marks in the rum spirits industry; (f) the MALIBU® trade dress has a high degree of recognition among the general consuming public of the United States; (g) Pernod Ricard and its predecessors have sold many

19

millions of bottles of its MALIBU® product; and (h) the MALIBU® trade dress is registered under the Lanham Act on the Principal Register.

50.    Defendant's conduct described above blurs and impairs the distinctiveness of the famous MALIBU® trade dress because:  (a) Defendant uses an opaque white bottle that is identical in white coloring to MALIBU®'s bottle and uses other highly similar trade dress features, such as the palm tree image on the front of the bottle, a stylized palm tree design on the neck label, similar fonts for the JACK and BAROCA brand names and descriptive words such as "COCONUT RUM," and an overall tropical island feel or look, to promote their brand; (b) the MALIBU® trade dress is inherently distinctive and has also acquired a high degree of distinctiveness; (c) Pernod Ricard engages in exclusive use of the MALIBU® trade dress; (d) the MALIBU® trade dress has a high degree of recognition among the general consuming public of the United States as a designation of source of Pernod Ricard's MALIBU® rum products; and (e) Defendant appears to have intended to deliberately create an association between itself and the MALIBU® trade dress and the goodwill symbolized by that trade dress.  Because of Defendant's use of the nearly identical bottle color, as well as the confusingly similar overall design, there is a likelihood that Defendant's conduct is causing actual association between Defendant's goods and Pernod Ricard's MALIBU® products.  White Rock's history of repeated trademark and trade dress infringement, along with evidence of the active and intentional intermingling of MALIBU® and White Rock bottles on retail shelves, is further evidence of a bad faith intent by the Defendant to deceive consumers and to unfairly attempt to

20

trade on the goodwill that the MALIBU® brand has spent over 20 years carefully and thoughtfully cultivating.

51.     Accordingly, Defendant's conduct described above is likely to cause dilution by blurring of, and does, in fact, dilute and detract from the distinctiveness of, the famous MALIBU® trade dress, with consequent damage to Pernod Ricard and to the substantial business and goodwill symbolized by the MALIBU® trade dress in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

52.     Defendant's willful acts of trade dress dilution have caused and, unless restrained, will continue to cause, great and irreparable injury to Pernod Ricard and the MALIBU® trade dress and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Pernod Ricard with no adequate remedy at law.

53.     By reason of the foregoing, Pernod Ricard is entitled to injunctive relief against Defendant, restraining further acts of trade dress dilution, and, after trial, to recover the damages resulting from Defendant's acts of trademark and trade dress dilution.

## COUNT V: TRADE DRESS DILUTION UNDER STATE LAW

54.     Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

55.     The MALIBU® trade dress is well known and distinctive.

56.    Defendant's manufacture, distribution, sale and promotion of its fruit-flavored rums are likely to dilute and detract from the distinctiveness of the MALIBU® trade dress.

57.    Defendant's acts of trade dress dilution, unless enjoined, will cause great injury to Pernod Ricard and to the business and goodwill represented by the MALIBU® trade dress, in an amount that cannot be ascertained at this time.

58.    The acts of Defendant as described above constitute trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l (McKinney Supp. 2009) and analogous dilution laws in other states. *See*, *e. g.,* Cal. Bus. & Prof. Code § 14247 (West 2008); Fla. Stat. § 495.151 (2008); and Tex. Bus. & Com. Code Ann. § 16.29 (Vernon 2007).

## COUNT VI: DECEPTIVE ACTS AND PRACTICES UNDER STATE LAW

59.    Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

60.    Defendant's conduct is oriented and directed towards consumers and is deceptive or misleading in a material way.

61.    Pernod Ricard has suffered injury as a result of Defendant's conduct.

62.    The acts of Defendant as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 (McKinney 2004) and under analogous laws in other states. *See*, *e.g.*, Cal. Bus. & Prof. Code § 17000 et. seq. (West 2008); Fla. Stat. § 501.201 et. seq. (2008); and Tex. Bus. & Com. Code Ann. § 17.46 (Vernon 2007).

## COUNT VII: UNFAIR COMPETITION
## UNDER STATE COMMON LAW

63.    Pernod Ricard repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

64.    The acts of Defendant as described above constitute unfair competition in violation of Pernod Ricard's rights under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o (McKinney Supp. 2009), and under analogous unfair competition laws in other states. *See*, *e.g.*, Cal. Bus. & Prof. Code § 14259 (West 2008); Fla. Stat. § 495.161 (2008); and Tex. Bus. & Com. Code § 16.27 (Vernon 2007).

### PRAYER FOR RELIEF

WHEREFORE, Pernod Ricard respectfully prays:

A.    That Defendant and all those acting in concert or participation with Defendant (including, but not limited to, Defendant's officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be permanently enjoined from:

i.    manufacturing, distributing, shipping, advertising, marketing, promoting, selling, offering or making available for sale or otherwise making any other use of any fruit-flavored rum products bottled in a opaque white bottle and/or using a palm tree design, or use any other trade dress features that are confusingly similar to the signature

23

MALIBU® white bottle trade dress or are likely to blur the distinctiveness

or tarnish the MALIBU® trade dress; and

      ii.      representing, by any means whatsoever, that any

products manufactured, distributed, advertised, offered or sold by

Defendant are Pernod Ricard's products or vice versa, and from otherwise

acting in a way likely to cause confusion, mistake or deception on the part

of purchasers or consumers as to the origin or sponsorship of such

products; and

      iii.      doing any other acts or things calculated or likely to

cause confusion or mistake in the minds of the public or to lead purchasers

or consumers into the belief that Defendant's products come from Pernod

Ricard or are somehow sponsored or licensed by, or associated or

affiliated with, Pernod Ricard or its products; and

      iv.      otherwise unfairly competing with Pernod Ricard.

      B.      That Defendant and those acting in concert or participation

with Defendant (including, but not limited to, Defendant's officers, directors, agents,

servants, wholesalers, distributors, retailers, employees, representatives, attorneys,

subsidiaries, related companies, successors, assigns and contracting parties) take

affirmative steps to dispel such false impressions that heretofore have been created by

their use of the confusingly similar White Rock products' trade dress, including, but not

limited to, recalling from any and all channels of distribution any and all infringing

products and promotional materials.

C.      That Defendant account to Pernod Ricard for Defendant's profits and any damages sustained by Pernod Ricard, to the extent calculable, arising from the foregoing acts of trade dress infringement, trademark and trade dress dilution, false designation of origin, deceptive acts and practices and unfair competition.

D.      That, in accordance with such accounting, Pernod Ricard be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117, N.Y. Gen. Bus. Law § 349(h), and analogous state laws.

E.      That Pernod Ricard be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117, N.Y. Gen. Bus. Law § 349(h), and analogous state laws.

F.      That Pernod Ricard be awarded punitive damages pursuant to the law of the State of New York and the laws of the other states in view of Defendant's intentional and willful trademark and trade dress infringement and other conduct.

G.      That Defendant deliver up for destruction all infringing products in Defendant's possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

H.      That Defendant file with the Court and serve on counsel for Pernod Ricard within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

I.      That Pernod Ricard have such other and further relief as the
Court may deem just and proper.

## JURY TRIAL DEMAND

Pernod Ricard demands a trial by jury on all claims as to which a jury trial may be
had.

Dated: October 2, 2009
       New York, New York

DEBEVOISE & PLIMPTON LLP

By: _____
    David H. Bernstein (dhbernstein@debevoise.com)
    Christopher J. Hamilton (cjhamilton@debevoise.com)
    S. Zev Parnass (szparnass@debevoise.com)
    919 Third Avenue
    New York, New York 10022
    (212) 909-6696 (telephone)
    (212) 521-7696 (facsimile)

*Attorneys for Plaintiff Pernod Ricard USA, LLC*

**Exhibit A**

Int. Cl.: 33

Prior U.S. Cls.: 47 and 49

**United States Patent and Trademark Office**    Reg. No. 3,393,773
Registered Mar. 11, 2008

## TRADEMARK
### PRINCIPAL REGISTER



PERNOD RICARD USA, LLC (INDIANA LTD
  LIAB CO)
100 MANHATTANVILLE ROAD
PURCHACE, NY 10577

FOR: DISTILLED SPIRIT SPECIALTY, NAMELY,
A COCONUT RUM, IN CLASS 33 (U.S. CLS. 47 AND
49).

FIRST USE 2-0-1983; IN COMMERCE 2-0-1983.

OWNER OF U.S. REG. NOS. 1,261,893 AND
1,374,134.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE THE OUTLINE OF THE BOTTLE
CAP, APART FROM THE MARK AS SHOWN.

THE COLOR(S) WHITE, BROWN AND ORANGE
IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE WORD "MAL-
IBU" AND THE DESIGN OF TWO PALM TREES
WITH A SETTING SUN, ALL IN COMBINATION
WITH A WHITE BOTTLE. THE COLOR WHITE IS A
FEATURE OF THE MARK. THE DOTTED LINES
ARE NOT A PART OF THE MARK AND MERELY
SERVE TO SHOW THE PLACEMENT OF THE
MARK ON THE CONTAINER FOR THE GOODS.
THE LINING SHOWN IN THE DRAWING APPEARS
TO SHOW THE SHAPE OF THE BOTTLE AND IS
NOT INTENDED TO INDICATE COLOR. THE BOT-
TLE IS WHITE; THE SUN IS ORANGE; AND THE
PALM TREES, WORDING AND BOTTLE CAP ARE
ALL BROWN.

SER. NO. 76-115,599, FILED 8-23-2000.

LINDA M. KING, EXAMINING ATTORNEY

**Exhibit B**



HOME    SUBSCRIBE    LINKS & RESOURCES    ABOUT US    CONTACT US    SITE MAP    MEDIA KIT



READ THE DIGITAL EDITION NOW!

**BEVBEAT**

BEER

BOTTLED WATER

CSD

ENERGY DRINKS

NEW AGE

RTD TEA

WINE/SPIRITS

**BEVSOLUTIONS**

DISTRIBUTION

PACKAGING

PRODUCTION

R&D

SALES & MARKETING

SUPPLY CHAIN

## Malibu Brings on La Noche

Written by Jennifer Cirillo
Saturday, 30 June 2007

Malibu takes its inaugural plunge to target the Hispanic community this summer with the launch of "Noche Blanca" (translation: White Night), a multi-faceted on premise sampling program led by Vital Marketing, a New York City-based experiential marketing agency.

The program, which is already underway, features tastemaker and influencer parties celebrating Malibu's white bottle and the common traits that the brand shares with the Hispanic culture.

Joseph Anthony, CEO of Vital Marketing, explains that more and more spirits companies are targeting the growing Hispanic community in the US because it is viewed as an opportunity to attract new consumers and also influence second- or third- generation Hispanics that are looking to develop their likes and dislikes.





REQUEST A FREE SUBSCRIPTION





"A lot of brands are running to try and develop brand affinity with these consumers as their tastes are maturing and they are becoming more interested in selecting the type of brands they are going to like--their favorites," he says.

And executing a non-traditional marketing campaign can better help spirits, like Malibu, reach their argeted demographics via direct marketing tactics such as on- and off-premise promotions. Especially when trying to reach the Hispanic community. "There are 20 different Hispanic sub cultures," says Anthony. "They don't all move to the beat of the same drum."

So the best way to make sure you are communicating with them effectively is to really get into their environment use the local intelligence that you derive from those communities and cultures and introduce those messages into your sampling programs and your on premise activations."

For Malibu, Vital Marketing created the Noche Blanca program, which stems from taking an asset from the brand (its white bottle) and using the color white to help make a connection with celebration. In five markets across the US--NY, LA, Miami, Chicago and Dallas--Malibu is turning nightclubs into mini white parties and brand ambassadors, dressed in white, get the party started and encourage club-goers to sample new cocktails, made with Malibu, of course, with different prizes, describes Anthony.

At the end of the summer, the program will culminate with an invite only White Party featuring live entertainment in each market.

"Everyone who comes have to wear white," says Anthony "And we're picking unique venues that really amplify the whole idea of Malibu and its connection to Caribbean and festive type of rum."

< Prev          Next >



## ▤ SPECIAL REPORTS



Fleet Report



State of the Industry



R&D Report



Supply Chain Report

## ▤ LISTS & RANKINGS

- Top 50 North American Companies



Beverage
Marketing
Corporation

**Focus Report:**
**Beverage Trends**
**in Casual Dining**
**and Quick-Service**
**Restaurants**

Learn More

- Global 100
- Contract Packers
- Top 25 Beer Wholesalers
- Top 25 Bottlers

## UPCLOSE



**Monster Energy: A Mighty Force**
Five years ago they were the underdog challenging category behemoth Red Bull. Now, Monster Energy is on a relentless drive towards domination.

ALSO:

- DeCrescente Distributing Co.: Growing with the Times
- Treu House of Munch, Inc.: Building A Future
- Power Trip Beverages, Inc.: Gaining Brand Power
- The Patrón Spirits Co.: Racing to Victory
- More company profiles

Home | Subscribe | Links & Resources | About Us | Contact Us | Site Map | Media Kit

R & D | Production | Packaging | Sales & Marketing | Distribution | Supply Chain | Beer | Bottled Water | CSD | Energy Drinks | New Age | RTD Tea | Wine/Spirits

© 2009 Beverage World Publications Group - All rights reserved.

Beverage World is published by Ideal Media.

Privacy Policy | Terms of Use



**Exhibit C**

RumReviews.com - home of the best rum reviews online!    Page 1 of 2

1:09-cv-02999-MGC    Document 14    Filed 10/21/2009    Page 35 of 36



## Reviews

So, you're interested in what we have to say... or at least curious! Please select one of the rums from the pulldown to investigate further. Additional search functions will be online soon, allowing rum type, drink recipe, flavor, character, and keyword lookups. All reviews are solely our opinion, and your opinion may vary.

Please select from below to search our RumReviews.

Barbarossa Coconut Rum     Go

## Barbarossa Coconut Rum

**Type:** Infused
**Availability:** Almost Everywhere
**Details:** Sweet
Infused
**Price:** $9.99 to $14.99

Ratings:







**Andy:** This rum has absolutely no smell and very little flavor. No harshness...no bite...no anything. It has so slight of a flavor there really is no point in mixing it with anything. I paid $5 for this rum and I think I overpaid.

**Adrian:** Barbarossa Coconut rum has absolutely no aroma and tastes like sugar water with just the smallest hint of coconut. When mixed with anything the flavor is completely lost. It's cheap for a reason.



**Chiama a Cuba**
Nuova carta
internazionale per
Cuba con ottima
qualità e prezzo
www.voipintheworld.com

**Coconut Bay St Lucia**
Great deals on the
all-inclusive
Coconut Bay
Resort in St. Lucia.
ResortVacationsToGo.cc

**Cocktail Recipe Videos**
Learn How to
Make the Top
Vodka Cocktails -
All From Sobieski
YouTube.com

**Free Grocery Card**
Enter Your
Zipcode And Get A
Free $250 Pre-
Paid Grocery
Card!
www.GroceryCardRewar

· **Ads by Google**·   Best Rums   Coconut Dry  Jamaican Rum   Drinks   Cocktail

Parrot Head Webring: Previous | Next | Random | Next 5 | Info

contact info:
mailus@rumreviews.com

Content and Design copyright 2006 - RumReviews.com. All Rights Reserved.
Reproduction in whole or in part in any form without the expressed written consent of RumReviews.com is prohibited.